BOARD OF EDUCATION OF THE CITY OF
NORWALK *v.* COMMISSION ON HUMAN
RIGHTS AND OPPORTUNITIES
ET AL.
(SC 16796)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued December 2, 2002—officially released October 28, 2003

*Thomas N. Sullivan,* filed a brief for the appellant (plaintiff).

*Robert A. Richardson,* with whom, on the brief, was *Regina M. Hopkins,* for the appellee (defendant John T. Saunders).

*Opinion*

ZARELLA, J. The plaintiff, the board of education of the city of Norwalk, appeals from the judgment of the trial court dismissing the plaintiff's appeal from the decision of the named defendant, the commission on human rights and opportunities (commission),[1] finding that the plaintiff had discriminated against the defendant, John T. Saunders, on the basis of race, color and age. The primary issue in this appeal is whether the

---

[1] The commission did not participate in this appeal.

commission properly applied the burden shifting framework used in employment discrimination cases. We conclude that the commission properly applied the framework to Saunders' race and color discrimination claims.[2] Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. Saunders is a black, African-American male who has been employed by the plaintiff since 1974 as a teacher at Nathan Hale Middle School (Nathan Hale) in Norwalk. In May, 1997, Saunders and several other applicants applied for the position of assistant principal at Nathan Hale. When Saunders applied for this position, he was forty-nine years old and had twenty-three years of teaching experience, as well as a myriad of other qualifications and credentials.[3] The

---

[2] Our conclusion that the commission properly applied the burden shifting framework and, consequently, properly determined that Saunders could prevail on his race and color discrimination claims affords Saunders full recovery. Accordingly, we need not reach the issue of whether Saunders' claim that the nondiscriminatory reasons proffered by the plaintiff were pretextual and, thus, supported the commission's finding of age discrimination under General Statutes § 46a-60 (a) (1) and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (a) (1994). See generally *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

[3] The commission found that Saunders had the following qualifications that were *required* qualifications for the assistant principal position:

"a. [Saunders] held a Connecticut intermediate, administrative and supervisor certificate for eleven years at the time of the interview. . . .

"b. [Saunders] completed an internship with the former assistant principal . . . .

"c. [Saunders] also holds a sixth year certificate in supervision and administration which is an advanced certificate focusing on the changing laws. . . .

"d. [Saunders] has administrative and supervisory experience in that at times he was placed in charge of the school when the principal was absent. . . .

"e. [Saunders] was a department head of the applied arts department. He was responsible for classroom supervision and he determined the budgetary needs of [that] department. . . .

"f. [Saunders] had been teaching at . . . Nathan Hale . . . and was

plaintiff does not dispute that Saunders met the minimum qualifications for the position of assistant principal.

## The job posting for the assistant principal position

knowledgeable in the educational policies, practices, and curriculum trends. He was also aware of the applicable laws and regulations relating to education and the changes in the policies and practices. . . .

"g. [Saunders] also developed curricula for the school and interpreted them to parents [and also explained] school policies to the parents. . . .

"h. [Saunders] worked effectively and had a good rapport with school staff, students, teachers and parents. . . .

"i. [Saunders] took many courses in child development and adolescence and overall teacher effectiveness. . . .

"j. [Saunders] always received 'Excellent to Outstanding' evaluations and various certificates and awards for his teaching abilities. . . .

"k. [Saunders] had leadership and supervisory abilities. He was the department chairman and team leader for the applied arts department. . . .

"l. [Saunders] possessed the ability to communicate orally and in writing. He had experience in lecturing as well as communicating with parents and school staff. . . .

"m. [Saunders] possessed experience in managing students both in[side] and outside of the classroom. . . .

"n. [Saunders] often volunteered his time in the community and was well liked by the students. . . .

"o. [Saunders] interacts and works with [special education] children [who] are placed in his art class and [his] applied arts department has the most contact throughout the building with the majority of [special education] children. . . .

"p. [Saunders] is computer literate."

The commission found that Saunders had the following qualifications that were *preferred* qualifications for the assistant principal position:

"a. [Saunders] participated in an apprenticeship program under the supervision of . . . [a] mentor. [Saunders] accompanied [the mentor] on [the mentor's] administrative rounds and did research and wrote reports on the school environment. The program lasted three weeks. . . .

"b. [Saunders] was knowledgeable in block scheduling of students. . . .

"c. [Saunders] had not been trained in computer scheduling but was familiar with the concept. . . .

"d. [Saunders] had experience through his teaching position in student counseling and discipline. . . .

"e. [Saunders] had a strong rapport with the students. . . .

"f. [Saunders] trained teachers and student teachers during his time with the beginning educator's support and training team . . . . [Saunders] evaluated and assessed student teachers striving to become full-time teachers."

listed required qualifications,[4] preferred qualifications,[5] and duties and responsibilities. In preparation of this posting, Joseph Cloherty, the principal of Nathan Hale, prepared a list of what he believed to be the required and preferred qualifications for the assistant principal position.[6] Cloherty did not include pupil placement team[7] and special education experience in his list. The job posting did indicate, however, under the duties and responsibilities section, that the assistant principal would be required to attend pupil placement team meetings and work closely with the special education department. Additionally, the job posting listed computer scheduling as a preferred qualification.

In anticipation of the interview process, Cloherty assembled a committee to interview the applicants for the position. The committee consisted of four people: Cloherty, Joanna Seiter, a parent of one of the students attending Nathan Hale, Karen Kinlock, a teacher at Nathan Hale, and Alexandria Reilly, an eighth grade

---

[4] The job posting contained a list of the following required qualifications: "[Connecticut] Intermediate Administrative and Supervisor Certificate. Administrative and supervisory ability. Knowledge of educational policies and practices, including curriculum trends, especially at the middle school level. Considerable human relations skills to work effectively with school staff, central office staff, parents and students. Demonstrated ability in leadership and supervision of adolescents and adults. Demonstrated knowledge of the developmental needs of pre-adolescents. Demonstrated ability as an effective teacher. Ability to communicate clearly orally and in writing with a wide variety of groups. Demonstrated leadership in a middle school setting. Experience in student management, teaching/counseling experience, computer literate."

[5] The job posting contained a list of the following preferred qualifications: "Participation in an administrator apprenticeship program . . . . Experience scheduling students. Familiar[ity] with computer scheduling. Experience with student counseling and discipline, strong rapport with students, faculty and parents. Evaluation and assessment experience."

[6] Cloherty prepared this list at the request of the plaintiff's personnel office. Cloherty was unaware of the identity of any of the applicants when he prepared the list.

[7] Pupil placements teams serve to evaluate students in need of special education.

African-American student at Nathan Hale. Cloherty met with the committee to discuss the questions that the candidates would be asked. When Cloherty met with the committee, he had knowledge of the identity of all of the applicants and had reviewed their applications. During the meeting, in response to a question that Seiter had asked about the necessary qualifications for the assistant principal position, Cloherty explained that his primary needs were familiarity with computer scheduling and pupil placement team experience. Nathan Hale has a large population of special education students and pupil placement teams serve to evaluate students in need of special education.

When the interviews were conducted, the plaintiff maintained an affirmative action plan that required, inter alia, that the interviewing committee be "composed of the Director of Personnel, Director of Curriculum and Assessment, other administrators selected by the Superintendent and the Superintendent . . . ." The plan further provided that "[t]eachers and parents may be included in the interviewing process." In addition, the plan required that "the interviewing team" have minority representation and that all applicants for an assistant principal position be interviewed by the principal of the school for which the position is sought.

The plaintiff was not in compliance with its affirmative action plan. Ralph E. Sloan, the superintendent of schools of the city of Norwalk, the director of personnel, and the director of curriculum and assessment were not members of the interviewing committee as required by the plan. Sloan testified at the commission hearing that, in his fifteen years as superintendent, he never had interviewed candidates for assistant principal positions. Furthermore, although the minority representation requirement technically was fulfilled by virtue of the presence of Reilly, the plan did not specifically authorize student representation on the committee. Although

the plan did not expressly prohibit such representation, it did not expressly authorize nonemployees other than parents to participate in the interview process. There is no evidence that a student previously had participated in an interview of this kind.

In June, 1997, after the interview process was complete, Saunders received a letter informing him that he had not been selected for the assistant principal position.[8] There were six candidates who had interviewed for the position and Saunders ranked third.[9] The applicant who ranked second was an African-American woman who had experience in computer scheduling. Michael McGrath, the applicant who ranked first, was offered the assistant principal position.[10] McGrath, a white male who was twenty-eight years old at the time of his application for the assistant principal position, had been hired as a guidance counselor at Nathan Hale in 1996. When McGrath applied for the position in May, 1997, he had been employed for one year at Nathan Hale, had two years of classroom experience and had worked as a guidance counselor for four years, which included work outside of Nathan Hale. Although McGrath did not have the same experience and credentials[11] as Saunders, he had been trained by the former

[8] Cloherty testified at the commission hearing that, as of 2000, the plaintiff never had hired an African-American as an assistant principal at Nathan Hale. Cloherty also testified, however, that, at that time, African-Americans assumed two of the four housemaster positions, which are equivalent to the assistant principal positions at the middle school level, at Norwalk High School and Brien McMahon High School in Norwalk.

[9] All six candidates who were interviewed for the assistant principal position were asked the same questions, and the interviews were equal in length.

[10] Cloherty met with Sloan after the interview process was complete and discussed the committee's recommendation to hire McGrath. Thereafter, Sloan met with McGrath after which he expressed approval of the committee's recommendation.

[11] The commission made the following findings with respect to McGrath's qualifications:

"At the time that . . . McGrath applied for the position, he had two years of classroom experience and had worked as a guidance counselor for four years, partly including working in New York. . . .

assistant principal and had assisted him with computer scheduling. McGrath also had experience with the pupil placement team process and had attended special education meetings. Although Saunders was computer literate, he did not have experience with computer scheduling. The guidance counselors at Nathan Hale were being trained, however, to do computer scheduling for the assistant principals, and Sloan, the superintendent, stated that it would not be difficult for someone to learn computer scheduling.

Reilly, the student member of the committee that interviewed the applicants, ranked Saunders first. The majority of the committee, however, ranked McGrath first, primarily because of his experience with pupil placement teams and computer scheduling. Seiter testified at the commission hearing that she did not place much weight in McGrath's lack of teaching experience

---

"[McGrath] . . . held a Connecticut provisional educator certificate for school counselor that did not permit him to teach. . . .

"At the time that . . . McGrath applied for the assistant principal position, his provisional educator certificate possessed a deficiency. . . . The deficiency was due to a course in special education that had not been taken. . . .

"[McGrath] had to complete the course in special education before receiving an initial certificate that still would not permit him to teach. . . .

"[McGrath] eventually cured his deficiency, which allowed him to be an administrator but did not permit him to teach a course. . . .

"During . . . McGrath's time as a guidance counselor . . . the former assistant principal . . . had trained him in computer scheduling and thereafter . . . McGrath assisted with the computer scheduling at Nathan Hale . . . .

"Guidance counselors were being trained to do computer scheduling to free up time for the assistant principals. . . .

"[Cloherty] was . . . McGrath's supervisor when [McGrath] was a guidance counselor. . . .

"Also, [the former assistant principal] had trained and assisted . . . McGrath with the computer scheduling once . . . McGrath began working as the assistant principal. . . .

"[Cloherty] did not participate in . . . McGrath's apprenticeship and does not remember with whom McGrath did the apprenticeship. . . .

"[McGrath] does not hold a master's degree in education but [rather] in guidance and counseling. . . . McGrath has a bachelor's degree in music."

inasmuch as Cloherty had indicated that pupil placement team experience and familiarity with computer scheduling were important qualifications for the assistant principal position. As we previously have noted, Cloherty knew the identity of the applicants and had reviewed their applications before he met with the committee prior to the interviews. Specifically, before Cloherty had met with the committee, he knew that McGrath stated in his cover letter that he had pupil placement team experience.

After Saunders had been informed that another person was offered the assistant principal position, Saunders wrote a letter to Thomas Turner, the assistant superintendent of human relations. In his letter, Saunders asked several questions about the hiring procedures for administrators in Norwalk, including questions regarding the propriety of having parents and students serve on the committee that conducted the interviews. Turner responded to Saunders' inquiries by sending a letter and a copy of the plaintiff's affirmative action plan. In his letter, Turner referred Saunders to the specific provisions of the plan. Turner also stated that he had sent a letter to Sloan reminding him to comply with the plan. The plaintiff did not take any further action in response to Saunders' letter or Turner's letter to Sloan.

On September 10, 1999, Saunders filed a complaint with the commission alleging that the plaintiff had discriminated against him in the terms and conditions of his employment in that the plaintiff did not promote him to the position of assistant principal because of his race, color and age in violation of General Statutes § 46a-60 (a) (1),[12] Title VII of the Civil Rights Act of

[12] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar . . . from employment any individual or to discrimi-

1964, 42 U.S.C. § 2000e-2 (a) (1994),[13] and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (a) (1994).[14] The commission investigated Saunders' allegations and found reasonable cause to believe that discrimination had occurred. After conciliation efforts had failed, the complaint was certified to public hearing. A hearing was held in April and May, 2000, before a commission referee.

Thereafter, the commission issued its decision. The commission made the following relevant findings: (1) Saunders met his burden of proving a prima facie case of race, color and age discrimination; (2) the plaintiff met its burden of producing legitimate, nondiscriminatory reasons for its decision not to hire Saunders; (3) the legitimate, nondiscriminatory reasons that the plaintiff produced were not credible; and (4) Saunders met his

nate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color . . . [or] age . . . ."

Although § 46a-60 (a) (1) was the subject of technical amendments in 2001; see Public Acts 2001, No. 01-28, § 8, those amendments are not relevant to the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 46a-60.

[13] Title 42 of the United States Code, § 2000e-2 (a), provides in relevant part: "It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] color . . . or

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race . . . [or] color . . . ."

[14] Title 29 of the United States Code, § 623 (a), provides is relevant part: "It shall be unlawful for an employer—

"(1) to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

"(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . ."

burden of proving that the legitimate, nondiscriminatory reasons advanced by the plaintiff were false. The commission thereupon ruled in favor of Saunders with respect to his race, color and age discrimination claims.

Pursuant to General Statutes §§ 4-183 (a)[15] and 46a-94a,[16] the plaintiff appealed to the trial court from the decision of the commission. The trial court rendered judgment dismissing the plaintiff's appeal. The trial court determined that the commission properly applied the law to the facts and that the commission's legal conclusions reasonably followed from the facts. Thereafter, the plaintiff appealed to the Appellate Court from the judgment of the trial court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff claims that the trial court improperly dismissed the plaintiff's administrative appeal. The plaintiff claims that the decision of the commission is clearly erroneous in light of the reliable, probative and substantial evidence on the whole record. Specifically, the plaintiff claims that the commission

[15] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[16] General Statutes § 46a-94a (a) provides: "The Commission on Human Rights and Opportunities, any respondent or any complainant aggrieved by a final order of a presiding officer or any complainant aggrieved by the dismissal of his complaint by the commission for failure to attend a mandatory mediation session as provided in subsection (c) of section 46a-83, a finding of no reasonable cause as provided in subsection (d) of said section 46a-83 or rejection of reconsideration of any dismissal as provided in subsection (e) of said section 46a-83, may appeal therefrom in accordance with section 4-183. The court on appeal shall also have jurisdiction to grant to the commission, respondent or complainant such temporary relief or restraining order as it deems just and suitable, and in like manner to make and enter a decree enforcing or modifying and enforcing as so modified or setting aside, in whole or in part, the order sought to be reviewed."

improperly: (1) applied the burden shifting framework utilized in employment discrimination cases; see, e.g., *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); (2) determined that the plaintiff's failure to comply with certain terms of its affirmative action plan was probative of intentional discrimination; (3) interfered with the right of the plaintiff, as an employer, to determine the qualifications of applicants in concluding that certain qualifications that the plaintiff had relied upon in hiring McGrath constituted evidence of pretext; and (4) relied on evidence that the plaintiff had not employed an African-American assistant principal in its middle schools in support of its finding of pretext.

As a threshold matter, we address the standard of review. "Our review of an agency's factual determination is constrained by General Statutes § 4-183 (j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . . This limited standard of review dictates that, [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly

erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record." (Citations omitted; internal quotation marks omitted.) *New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, 247 Conn. 95, 117–18, 717 A.2d 1276 (1998). With respect to questions of law, "[w]e have said that [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) Id., 117 n.21.

We begin by reviewing the plaintiff's claim that the commission improperly applied the burden shifting framework utilized in employment discrimination cases. Specifically, the plaintiff claims that the commission improperly applied the framework set forth in *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 530 U.S. 142–43.[17] Recently, in *Craine* v. *Trinity College*, 259 Conn. 625, 636–37, 645, 791 A.2d 518 (2002), we stated that, in order to determine whether a complainant may prevail on a disparate treatment claim, we employ the analytical framework set forth by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668

---

[17] We note that there is an ensuing debate among the federal circuit courts regarding the effect of *Reeves* on a complainant's ultimate burden of proof in an employment discrimination action. We need not concern ourselves with this debate in the present case, however, because, as we will further discuss later in this opinion, the evidence adduced in support of Saunders' race and color discrimination claims satisfies even the most demanding burden of proof under *Reeves*. For a more in-depth discussion of the federal circuit court debate, see R. Vantrease, "The Aftermath of *St. Mary's Honor Center v. Hicks* and *Reeves v. Sanderson Plumbing Products, Inc.*: A Call for Clarification," 39 Brandeis L.J. 747, 751–52 (2001) (exploring "pretext only" versus "pretext plus" debate among federal circuit courts).

(1973) (*McDonnell Douglas*), and refined in *Reeves*.[18] We therefore begin by reviewing the United States Supreme Court's decision in *Reeves*.

"When a [complainant] alleges disparate treatment, liability depends on whether the protected trait[19] . . . actually motivated the employer's decision. . . . That is, the [complainant's protected trait] must have actually played a role in [the employer's decisionmaking] process and [have] had a determinative influence on the outcome." (Citation omitted; internal quotation marks omitted.) *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 530 U.S. 141.

"*McDonnell Douglas* and subsequent decisions have established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases. . . . First, the [complainant] must establish a prima facie case of discrimination." (Citation omitted; internal quotation marks omitted.) Id., 142. In order to establish a prima facie case, the complainant must prove that: (1) he is in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination. E.g., *Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir. 2001); see *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 530 U.S. 142. In an age discrimination case, the complainant need not establish that the person who ultimately was offered the position does not fall within the protected class. See *O'Connor* v. *Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996).

---

[18] "We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." *Craine* v. *Trinity College*, supra, 259 Conn. 637 n.6.

[19] In the present case, the protected traits at issue are race, color and age.

In the present case, the commission found that Saunders adduced evidence establishing that: (1) he is black, African-American and more than forty years old; (2) he applied and was qualified for the position of assistant principal at Nathan Hale; (3) the plaintiff did not offer Saunders the position; and (4) the plaintiff awarded the position to a younger, white male. Thus, the commission determined that Saunders had met his burden of proving a prima facie case of discrimination. On appeal, the plaintiff does not challenge the commission's determination that Saunders proved his prima facie case.

Once the complainant establishes a prima facie case, the employer then must produce legitimate, nondiscriminatory reasons for its adverse employment action. *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 530 U.S. 142. "This burden is one of production, not persuasion; it can involve no credibility assessment." (Internal quotation marks omitted.) Id.

In the present case, the commission determined that the plaintiff had satisfied its burden of producing legitimate, nondiscriminatory reasons for selecting McGrath instead of Saunders. Specifically, the plaintiff claimed that McGrath was the most qualified inasmuch as he had more pupil placement team experience, was more familiar with computer scheduling, and interviewed better by giving more detailed responses during his interview.

Once the employer produces legitimate, nondiscriminatory reasons for its adverse employment action, the complainant then must prove, by a preponderance of the evidence, that the employer intentionally discriminated against him. Id., 143. "Although intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [complainant] remains at all times

with the [complainant]. . . . [I]n attempting to satisfy this burden, the [complainant]—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." (Citation omitted; internal quotation marks omitted.) Id.

The plaintiff claims that, under *Reeves*, "[a] prima facie case of discrimination, even when combined with sufficient evidence that the employer's reasons are false, will not always be adequate to sustain a fact finder's finding of liability for intentional discrimination. This is because there must be not only sufficient evidence that the employer's reasons are false (pretextual) but also sufficient evidence that the employer's reasons were a pretext for intentional discrimination. Stated another way, there must be sufficient evidence on the record that the . . . protected trait or traits played a role in the decision-making process and actually motivated the employer's decision."

In *Reeves*, the United States Supreme Court reviewed the conclusion of the Fifth Circuit Court of Appeals that a prima facie case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the employer's legitimate, nondiscriminatory reasons, is insufficient, as a matter of law, to sustain a finding of intentional discrimination. Id., 146. The United States Supreme Court concluded that "the [Fifth Circuit] Court of Appeals misconceived the evidentiary burden borne by [complainants] who attempt to prove intentional discrimination through indirect evidence. This much is evident from . . . *St. Mary's Honor Center* [v. *Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), in which the court] . . . held that the factfinder's rejection of the employer's legitimate, nondiscriminatory

reason for its action does not compel judgment for the [complainant]. . . . The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct. . . . In other words, [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the [complainant's] explanation of intentional discrimination. . . .

"In reaching this conclusion, however, [the court] reasoned that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Specifically, [the court] stated: The factfinder's disbelief of the reasons put forward by the [employer] (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the [employer's] proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination. . . . Proof that the [employer's] explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. . . . Thus, a [complainant's] prima facie

case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

"This is not to say that such a showing by the [complainant] will always be adequate to sustain a jury's finding of liability. Certainly there will be instances [in which], although the [complainant] has established a prima facie case and set forth sufficient evidence to reject the [employer's] explanation, no rational factfinder could conclude that the action was discriminatory." (Citations omitted; internal quotation marks omitted.) *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 530 U.S. 146–48.

Ultimately, the court in *Reeves* concluded: "The [d]istrict [c]ourt plainly informed the jury that [the complainant] was required to show by a preponderance of the evidence that [the protected trait] was a determining and motivating factor in the decision of [the employer] to terminate him. . . . The court instructed the jury that, to show that [the employer's] explanation was a pretext for discrimination, [the complainant] had to demonstrate [first], that the stated reasons were not the real reasons for [the] discharge; and [second], that [the unlawful] discrimination was the real reason for [the] discharge. . . . Given that [the complainant] established a prima facie case of discrimination, introduced enough evidence for the jury to reject [the employer's] explanation, and produced additional evidence of age-based animus, there was sufficient evidence for the jury to find that [the employer] had intentionally discriminated. The [d]istrict [c]ourt was therefore correct to submit the case to the jury, and the [c]ourt of [a]ppeals erred in overturning its verdict." (Citations omitted; internal quotation marks omitted.) Id., 153–54.

*Reeves* stands for the proposition that an employment discrimination claim will not necessarily fail, as a matter of law, when the only evidence of discrimination is the evidence necessary to establish a prima facie case and evidence that the employer's legitimate, nondiscriminatory reasons are false. The court in *Reeves* acknowledged that evidence demonstrating that the legitimate, nondiscriminatory reasons advanced by the employer are false may be, in and of itself, sufficient to establish intentional discrimination.

In the present case, the commission applied the correct legal standard for employment discrimination claims. The commission stated in its decision: "The complainant has the burden of proof to present evidence of a prima facie case of discrimination and, once that is done, the [employer] has the burden of production of a legitimate, nondiscriminatory reason . . . . [I]f the [employer] satisfies that burden, then the complainant has the burden to present evidence that the proffered legitimate reason[s] were not the true reasons, but were a pretext for discrimination." (Internal quotation marks omitted.)

The commission determined that the plaintiff had satisfied its burden of producing legitimate, nondiscriminatory reasons for selecting McGrath but nonetheless determined that the plaintiff's legitimate, nondiscriminatory reasons for selecting McGrath were false. In support of this finding, the commission relied on several pieces of evidence, two of which were directly related to Saunders' race and color discrimination claims. For example, the commission relied on evidence that the plaintiff had failed to satisfy certain "procedural" requirements in accordance with its affirmative action plan. The commission also relied on statistical evidence that the plaintiff had not employed a single African-American person as an assistant principal in its middle schools.

The plaintiff claims in its brief that, "[i]n order to sustain the [commission's] ultimate finding of intentional discrimination in this case, there must be evidence not only that the plaintiff's legitimate, nondiscriminatory reasons for rejecting Saunders [we]re false, but also that intentional discrimination on the basis of race, color, and/or age was the *real reason* for such rejection. [An employer's] reason cannot be proved to be a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason. . . . [Saunders was] required to do more than prove that the plaintiff's legitimate, nondiscriminatory reasons for denying [him] a promotion were a pretext, i.e., false. Assuming [that Saunders] met that burden, [he was] also required to prove that these reasons were a pretext for intentional discrimination on the basis of race, color and/or age, i.e., that the real reason for rejecting Saunders was such intentional discrimination." (Citations omitted; emphasis in original; internal quotation marks omitted.)

In making such a claim, the plaintiff fails to acknowledge the explicit holding in *Reeves* that evidence establishing the falsity of the legitimate, nondiscriminatory reasons advanced by the employer may be, in and of itself, enough to support the trier of fact's ultimate finding of intentional discrimination. In the present case, the commission determined that "too many weaknesses, contradictions, inconsistencies and implausibilities . . . combined with [Saunders'] prima facie case, and additional evidence concerning [the plaintiff's] noncompliance with its affirmative action [plan], as well as the lack of African-American assistant principals employed by the [the plaintiff] cause [the commission] to disbelieve [the plaintiff's] proffered legitimate, nondiscriminatory reasons. . . .

"For all the foregoing reasons, [the commission] find[s] [that Saunders] has met [his] burdens of proving

a prima facie case and proving [the plaintiff's] reasons to be false."

Furthermore, the plaintiff implicitly acknowledges that the commission found evidence relating to falsity probative of race and color discrimination. Indeed, the remainder of the plaintiff's claims in this appeal involve the plaintiff's assertion that specific pieces of evidence on which the commission relied should not have been regarded as probative of intentional race or color discrimination. The sole remaining issue, therefore, is whether the commission reasonably could have inferred from the evidence before it that the plaintiff intentionally discriminated against Saunders on the basis of race or color.

The plaintiff claims that the commission improperly: (1) determined that the plaintiff's failure to comply with certain terms of its affirmative action plan was probative of intentional discrimination; (2) interfered with the right of the plaintiff, as an employer, to determine the qualifications of applicants in concluding that certain qualifications that the plaintiff had relied on in hiring McGrath constituted evidence of pretext; and (3) relied on evidence that the plaintiff had not employed any African-American assistant principals in its middle schools in support of its finding of pretext. On the basis of the evidence on the whole record, however, we agree that a fact finder reasonably could have inferred that the plaintiff intentionally discriminated against Saunders on the basis of race and color.

The plaintiff first claims that its failure to satisfy certain "procedural" requirements in accordance with its affirmative action plan was not probative of discrimination because Saunders never proved that the plaintiff's failure in this regard had impacted the plan's goals with regard to minority recruitment and the eradication of discriminatory treatment. The plaintiff also claims

that procedural irregularities were not necessarily evidence of pretext and that it is not the function of courts to sit as super personnel departments, free to second-guess the business judgments of an employer.

We agree with the analysis of the Second Circuit Court of Appeals regarding the second-guessing of an employer's hiring standards and procedural irregularities. "While we do not second-guess an employer's hiring standards, the reasons for its employment decision, including its alleged reliance on such standards, are subject to scrutiny under Title VII, and [d]epartures from procedural regularity, for example, can raise a question as to the good faith of the process where the departure may reasonably affect the decision." (Internal quotation marks omitted.) *Stern* v. *Trustees of Columbia University*, 131 F.3d 305, 313 (2d Cir. 1997). Additionally, we have stated that, "[i]n order for the procedural irregularity to be probative of the presence of actual discrimination, the [complainant] must also be able to show that the irregularity had a tangible effect on the [decision]." *Craine* v. *Trinity College*, supra, 259 Conn. 642 n.11.

In the present case, a fact finder reasonably could have found, as the commission did, that the plaintiff's less than full compliance with its affirmative action plan did have a tangible effect on the hiring decision. For example, the plaintiff's plan requires minority representation on the interviewing committee. Although the plaintiff technically satisfied this requirement, it did so by placing an African-American student on the committee. Presumably, the minority representation requirement was to ensure that minority applicants would have an influential voice on the hiring committee. It was not unreasonable for the commission to find that the interviewing committee would not give nearly as much weight to an eighth grade student's recommendation as opposed to an adult's recommendation. The fact that

the African-American student did rank the defendant first, coupled with the fact that Saunders ultimately was not selected, further substantiates the commission's finding.

The plaintiff next claims that the commission improperly interfered with the right of the plaintiff, as an employer, to determine the qualifications of applicants in concluding that certain qualifications that the plaintiff had relied on in hiring McGrath constituted evidence of pretext. As we previously stated, "[w]hile we do not second-guess an employer's hiring standards, the reasons for its employment decision, including its alleged reliance on such standards, are subject to scrutiny . . . ." *Stern* v. *Trustees of Columbia University*, supra, 131 F.3d 313.

In the present case, the commission did not second-guess the plaintiff's hiring standards but, rather, found that the reasons offered were not credible. This distinction is subtle but important. The essence of this distinction can be illustrated by the following two scenarios. In the first scenario, the fact finder determines that the reasons that the employer offers are not important even though the employer sincerely believes that they are important. This scenario represents an improper interference with the right of an employer to determine the qualifications of its applicants. In the second scenario, however, which we believe is analogous to the facts of the present case, the fact finder does not find that the reasons are not important, but, rather, that the employer does not even believe that the reasons are important. In the present case, the commission did not conclude that pupil placement team and computer scheduling experience constitute improper selection criteria. Rather, the commission concluded that, on the basis of numerous pieces of evidence, the nondiscriminatory reasons that the plaintiff offered to show why it had hired McGrath as opposed to Saunders were not credi-

ble because the hiring criteria changed between the filing of the applications for the assistant principal position and the interviews conducted in connection therewith.

The commission specifically relied on evidence that Cloherty never mentioned pupil placement team and special education experience when he had provided the plaintiff's personnel office with a list of the required and preferred qualifications for the assistant principal position. Furthermore, the commission relied on evidence that Cloherty later emphasized the importance of pupil placement team and special education experience to the interviewing committee only after he knew who the applicants were and knew that McGrath's cover letter had indicated that he had such experience. With respect to computer scheduling experience, the commission found that the computer scheduling responsibility was going to be transferred from the assistant principal to the guidance department in any event, and Sloan indicated in his testimony that it is relatively easy to acquire the skills necessary to perform computer scheduling.

The plaintiff's final claim is that the commission improperly relied on statistical evidence that the plaintiff did not employ any African-American assistant principals in its middle schools in support of its finding of pretext. The plaintiff claims that, in general, statistical evidence in disparate treatment cases has little bearing on the issue of whether an employer intentionally discriminated against an employee or prospective employee. In addition, the plaintiff claims that, inasmuch as Saunders adduced no evidence regarding the available pool of candidates for the middle school assistant principal positions, that statistic is meaningless.

We agree with the plaintiff that the statistical evidence offered by Saunders is weak and perhaps mean-

ingless when considered in isolation. "[S]tatistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its [adverse employment] decision . . . . This is because a[n] [employer's] overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer . . . . Without an indication of a connection between the statistics, the practices of the employer, and the employee's case, statistics alone are likely to be inadequate to show that the employer's decision . . . was impermissibly based on [a protected trait]." (Citations omitted; internal quotation marks omitted.) *LeBlanc* v. *Great American Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994).

Nevertheless, a fact finder reasonably could have found the evidence probative when viewed in light of the evidence on the whole record. Inasmuch as we already have discussed other evidence on which a fact finder reasonably could have relied to support an inference of race and color discrimination, we conclude that the commission's reliance on the statistical evidence was proper.

Finally, we recognize that "the question facing triers of fact in [employment] discrimination cases is both sensitive and difficult . . . ." (Internal quotation marks omitted.) *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 530 U.S. 141. There rarely will be direct evidence of discrimination. See id. In recognition of this fact, we have adopted a framework that enables us to analyze discrimination claims based primarily on circumstantial evidence. See, e.g., *Craine* v. *Trinity College*, supra, 259 Conn. 636–37 (applying burden shifting framework set forth in *McDonnell Douglas Corp.* v. *Green*, supra, 411 U.S. 802–805); *Board of Education* v. *Commission on Human Rights & Opportunities*,

176 Conn. 533, 537, 409 A.2d 1013 (1979) (same). The ultimate burden, however, rests with the complainant to establish, by a preponderance of the evidence, that the employer intentionally discriminated against him. *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 143.

We also recognize that specific pieces of evidence, when viewed in isolation, may not be sufficient to support an inference of discrimination beyond mere conjecture or surmise. Nevertheless, evidence is not to be viewed in a vacuum. The Second Circuit Court of Appeals has rejected a contrary view. See *Stern* v. *Trustees of Columbia University*, supra, 131 F.3d 314 ("[t]he [fact finder] . . . will be entitled to view the evidence as a whole in assessing whether there was impermissible discrimination and whether the [employer's] proffered explanation is a pretext for that discrimination").

We therefore conclude that the commission properly inferred race and color discrimination from its finding of falsity. Consequently, the trial court properly concluded that the commission correctly applied the law to the facts of Saunders' race and color discrimination claims.

The judgment is affirmed.

In this opinion the other justices concurred.