STACI DAVIS *v.* MANCHESTER HEALTH
CENTER, INC.
(AC 24319)

Foti, Schaller and Dupont, Js.

Argued December 9, 2004—officially released March 15, 2005

*Kimberly A. Knox*, with whom were *Kenneth J. Bartschi* and, on the brief, *Stanley M. Falkenstein* and *Julia Morris Paul*, and *Tara L. Shaw*, certified legal intern, for the appellant (defendant).

*Angelo Cicchiello*, with whom, on the brief, was *Stacy L. Comeau*, for the appellee (plaintiff).

DUPONT, J. This appeal arises out of a judgment in favor of the plaintiff, Staci Davis, in her two count action alleging wrongful termination of employment in violation of General Statutes § 46a-60 (a) (7) (A), (E) and (G),[1] and negligent infliction of emotional distress under the common law. The defendant, Manchester Health Center, Inc., appeals from the judgment of the trial court following a jury trial resulting in a verdict in favor of the plaintiff on both counts. The defendant claims that (1) the evidence did not support the verdict on the plaintiff's claim that the defendant had discriminated against her because of her pregnancy in violation of § 46a-60 (a) (7) (A), (2) the court improperly construed § 46a-60 (a) (7) (E) and (G) by equating actual notice with written notice, and (3) the court improperly denied the defendant's motion for a directed verdict as to the claim of negligent infliction of emotional distress. The defendant also claims that if the plaintiff is not entitled to judgment on her wrongful termination claim, she is not entitled to an award of attorney's fees as provided for in General Statutes § 46a-104.[2] We affirm the judgment of the trial court.

[1] General Statutes § 46a-60 provides in relevant part: "Discriminatory employment practices prohibited. (a) It shall be a discriminatory practice in violation of this section . . . (7) For an employer, by the employer or the employer's agent: (A) To terminate a woman's employment because of her pregnancy . . . (E) to fail or refuse to make a reasonable effort to transfer a pregnant employee to any suitable temporary position which may be available in any case in which an employee gives written notice of her pregnancy to her employer and the employer or pregnant employee reasonably believes that continued employment in the position held by the pregnant employee may cause injury to the employee or fetus . . . or (G) to fail or refuse to inform employees of the employer, by any reasonable means, that they must give written notice of their pregnancy in order to be eligible for transfer to a temporary position . . . ."

[2] General Statutes § 46a-104 provides: "Civil action for discriminatory practice: Relief. The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs."

## I

## PROCEDURAL AND FACTUAL BACKGROUND

The jury reasonably could have found the following facts. The plaintiff began working as a certified nursing assistant on a part-time basis for the defendant at its nursing home, Crestfield Rehabilitation Center, in Manchester in February, 1997, and became a full-time employee in August, 1998. In September, 1998, the plaintiff learned that she was pregnant, a fact that the plaintiff conveyed to the defendant's management by early October, 1998.[3]

The nursing home facility is divided into several wings. Wings one and three are occupied largely by long-term care patients who are unable to care for themselves and require considerable assistance from the nursing assistants. Wings two and four provide rehabilitation services for patients who eventually will return to the community, whereas wings one and three provide care to patients who require permanent placement. In November, 1998, the patient capacity for wings one through four was approximately thirty-two patients on wing one, fourteen patients on wing two, thirty patients on wing three and twenty patients on wing four. The duties of a certified nurse's aide include carrying, bending, squatting, lifting, pushing and pulling with the whole body on a frequent basis. The highest physical demands of the job are incurred while transferring a resident who requires the assistance of one or more persons in order to go from a prone to a seated position or from sitting to standing or when lifting a resident from a chair, toilet, commode, bed or the floor.

On Sunday, November 29, 1998, the plaintiff reported to work. She was scheduled to work from 3 p.m. to

---

[3] The defendant did not deny knowledge of the pregnancy, but claims on appeal that it did not violate General Statutes § 46a-60 (a) (7) (E) because the plaintiff did not provide the defendant with written notice of the pregnancy.

11 p.m. on wing two. When she arrived, however, her supervisor, Dorothy Wierzbicki, informed her that she had been reassigned to wing one because the nursing assistant previously assigned to that wing that evening was absent due to illness. Wierzbicki, who at that time had been employed by the defendant for eight years as a nursing supervisor, was the sole supervisor in charge of the defendant's facility at the time of the plaintiff's shift. Concerned with the heavier workload associated with wing one, the plaintiff informed Wierzbicki that she had had cramps while working her shift on the previous day and that she could not tolerate working on wing one.[4] The plaintiff also informed Wierzbicki that the defendant's assistant director of nursing, Susan DeBari, and the director of nursing, Michele Berneski, previously had told the plaintiff that she did not have to work on wing one. Expressing serious concern about her own health and that of her unborn child, the plaintiff offered to work that evening on any other wing but wing one. The plaintiff believed that wing one's patients were heavier, more combative and more limited in terms of their physical activity.

Remaining steadfast in her insistence that the plaintiff work wing one that evening, Wierzbicki refused to reassign the plaintiff to another wing. Another nursing assistant, Colleen O'Neill Zelonis, overheard the plaintiff's exchange with Wierzbicki and offered to work wing one for the plaintiff. Wierzbicki, who indicated to Zelonis that she did not believe the plaintiff's concerns, informed Zelonis that that would not be necessary. In a loud and sarcastic tone, Wierzbicki told the plaintiff to "deal with it" or leave and never come back. Crying throughout the exchange with Wierzbicki, which took

---

[4] The previous night, November 28, 1998, Christina Kloter, another nurse's aide, helped the plaintiff manage with the heavier aspects of her work by trading patients with the plaintiff so that Kloter assumed the care of the patients who were more difficult to lift.

place within earshot of three other employees, the plaintiff telephoned her husband and then left the premises. The defendant had in place at the time of the termination of the plaintiff's employment a policy that permitted employees either to "call out" and not report for the employee's scheduled shift, due to illness, or to leave their shift if they became ill during the shift without being discharged from their employment.

The day after the plaintiff had left the premises, she was asked to return to meet with the director of nursing. At the conclusion of a twenty minute meeting on November 30, 1998, the plaintiff was told that the defendant would investigate the situation and get back to her. Later that day, the plaintiff made several telephone calls to the facility to beg for her job and once again to explain that she had left on November 29, 1998, because she was afraid for her unborn child. She was informed by telephone on November 30, 1998, that her employment was terminated.

On February 12, 2003, following a twelve day trial, the jury returned a verdict in favor of the plaintiff. The jury answered three interrogatories in the affirmative as to each of the three statutory subparagraphs involved in the first count of the plaintiff's complaint, namely, § 46a-60 (a) (7) (A), (E) and (G). The jury awarded the plaintiff $67,471.95 in economic damages for the statutory violations alleged in count one and $7500 in noneconomic damages as to the second count alleging negligent infliction of emotional distress. On February 21, 2003, the defendant filed a motion to set aside the verdict, which the court denied.[5] Following a postver-

---

[5] At the close of the plaintiff's case, the defendant filed a motion for a directed verdict as to count two, negligent infliction of emotional distress. The court heard oral argument on that motion on January 31, 2003, but reserved decision on that motion. Following the verdict in favor of the plaintiff, the defendant filed a motion to set aside the verdict and for judgment in its favor as to count two.

dict hearing, the court ordered the defendant, pursuant to § 46a-104, to pay $43,560 in attorney's fees. This appeal followed. Additional facts will be set forth as necessary.

## II

## STATUTORY CLAIM

The defendant claims that the plaintiff presented no independent evidence that it engaged in a discriminatory practice prohibited by § 46a-60 (a) (7) (A), namely, a termination of employment because of her pregnancy. That claim presents a mixed question of law and fact. We first must determine whether, as a matter of law, the plaintiff had to present evidence unique to each of the subparagraphs pursuant to which she sought relief, namely, § 46a-60 (a) (7) (A), (E) and (G), or whether she can prevail on the basis of proof of any one of the subparagraphs. If proof of only one of the subparagraphs, namely (A), is sufficient to establish a discriminatory practice, we next must determine whether the evidence was sufficient to support the jury's finding of a discriminatory practice.

In asserting that the plaintiff's claim for wrongful termination of employment because of her pregnancy, a violation of subparagraph (A), was not supported by independent evidence, the defendant presupposes the validity of its interpretation of § 46a-60 (a) (7). The defendant's interpretation, in short, is that § 46a-60 (a) (7) (A) cannot be the basis on which liability is found when another, more specific subparagraph, § 46a-60 (a) (7) (E) or (G), appears to address the incident giving rise to the plaintiff's allegation of a discriminatory practice. The defendant argues that because the plaintiff claims that the defendant violated three subparagraphs of § 46a-60 (a) (7), evidence that is repetitive of that offered in connection with the claim brought pursuant to § 46a-60 (a) (7) (E) or (G) cannot be the basis for

liability under § 46a-60 (a) (7) (A). The defendant concludes that because the evidence relied on by the plaintiff in support of the claimed violation of subparagraph (A) is the same evidence offered in connection with her claim of a violation of subparagraph (E) or (G), the claim alleging a violation of subparagraph (A) cannot stand without some other independent evidence.[6] We disagree.

"Issues of statutory construction present questions of law, over which we exercise plenary review. . . . When construing a statute, we first look to its text, as directed by [General Statutes § 1-2z], which provides: 'The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.' When a statute is not plain and unambiguous, we also seek interpretive guidance from the legislative history

[6] In support of that interpretation of General Statutes § 46a-60 (a) (7), the defendant cites *Fleet National Bank's Appeal from Probate*, 267 Conn. 229, 250, 837 A.2d 785 (2004), for the proposition that "[i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) Id., quoting *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 536–37, 829 A.2d 818 (2003).

We agree with that proposition, as we must, but conclude that it has no bearing on our resolution of the defendant's claim. There is a purpose behind subparagraph (A), prohibiting an employer from terminating employment on the basis of pregnancy, subparagraph (E), prohibiting an employer, subject to some conditions, from refusing an employee's reasonable request for temporary reassignment of duties, and also subparagraph (G), prohibiting an employer from failing to inform an employee of the necessity of written notice of pregnancy. We disagree with the defendant's claim that a single incident cannot give rise to liability under more than one subparagraph of § 46a-60 (a) (7).

of the statute and the circumstances surrounding its enactment, the legislative policy it was designed to implement, the statute's relationship to existing legislation and common-law principles governing the same general subject matter." (Citation omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 742, 865 A.2d 428 (2004).

The structure and plain meaning of § 40a-60 (a) (7) belies the defendant's argument. Section 40a-60 (a) (7) lists seven situations, in the disjunctive, in which an employer may be found to be in violation of § 40a-60 (a) (7). "The use of the disjunctive or between the [multiple] parts of the statute indicates a clear legislative intent of separability." (Internal quotation marks omitted.) *State* v. *Payne*, 240 Conn. 766, 773, 695 A.2d 525 (1997), overruled in part on other grounds, *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004). Subparagraph (A) and subparagraphs (E) or (G) are not mutually exclusive. It is possible for an employee to be discharged on the basis of pregnancy without a denial of a temporary reassignment or for an employee to be denied temporary reassignment of duties and not be discharged or for an employee to be both discharged on the basis of pregnancy and denied temporary reassignment of duties. There is no requirement within the statutory text that evidence offered to prove a violation of one subparagraph of § 40a-60 (a) (7) may not be offered, and be independently sufficient, to prove a claimed violation of a separate subparagraph under that same statutory subdivision. Moreover, nothing in the text of the statute requires that in order to prevail on multiple grounds under § 46a-60 (a) (7), a plaintiff must produce evidence unique to each claimed violation. In other words, nothing in the text of the statute requires, as the defendant contends it does, that a claimed violation of subparagraph (A) must be supported by "independent evidence" not offered in connection with

claims brought pursuant to any of the other subparagraphs.

As our Supreme Court repeatedly has stated: "[T]he question facing triers of fact in [employment] discrimination cases is both sensitive and difficult . . . . There rarely will be direct evidence of discrimination. . . . In recognition of this fact, we have adopted a framework that enables us to analyze discrimination claims based primarily on circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 516, 832 A.2d 660 (2003). The defendant's construction of § 46a-60 (a) (7) would effectively constrain the available evidence an employee may offer in connection with her claim for wrongful termination of employment because of her pregnancy under subparagraph (A). We conclude that under § 46a-60 (a) (7), the plaintiff's claim under subparagraph (A) does not fail merely because the evidence offered to prove the defendant's violation of that subparagraph arose out of an incident that is also arguably within the purview of another subparagraph under the same statutory subdivision.

We next address the defendant's claim that the plaintiff failed to offer evidence sufficient to prove the defendant's violation of § 46-a-60 (a) (7) (A). As a preliminary matter, we set forth the applicable standard of review. "The standards governing our review of a sufficiency of evidence claim are well established and rigorous. . . . [I]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict

of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Citations omitted; internal quotation marks omitted.) *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 442, 815 A.2d 119 (2003).

As noted previously, the jury reasonably could have found that the workload a nursing assistant is required to bear on wing one is significantly heavier than what would be required on other wings. The jury also could have concluded that when the plaintiff arrived for her scheduled shift on November 29, 1998, she informed Wierzbicki that because of recent cramping associated with her pregnancy, and out of concern for her own health and the health of her unborn child, she could not work on wing one. The evidence also reasonably entitled the jury to conclude that immediately after the plaintiff voiced that concern, Wierzbicki refused to permit the plaintiff to work on a different wing and instructed the plaintiff to either "deal with it" or leave and never come back, even though means of accommodation were available and the defendant's own policy would have permitted the plaintiff simply to go home "due to illness" without her employment being terminated. Although the defendant presented evidence through Wierzbicki, Gary Spieker, the defendant's administrator, and Roland Castleman, the defendant's chief executive officer, that the defendant terminated the plaintiff's employment for wilful misconduct, the assessment of those witnesses' credibility and whether the proffered justification merely was pretextual was solely within the province of the jury.

When viewed in the light most favorable to the plaintiff, the evidence reasonably supports the conclusion that the defendant terminated her employment for choosing to leave her shift rather than to remain in an assignment she reasonably believed posed a risk to her

health and that of her unborn child. The jury reasonably could have found, therefore, that a direct nexus existed between the plaintiff's pregnancy and the defendant's termination of the plaintiff's employment. We conclude that the jury's finding that the defendant terminated the plaintiff's employment because of her pregnancy, in violation § 46a-60 (a) (7) (A), was reasonably supported by the evidence. Because our resolution of the defendant's claim of evidentiary insufficiency in connection with § 46a-60 (a) (7) (A) is dispositive, it is unnecessary to address the defendant's remaining claims relating to § 47a-60 (a) (7) (E) and (G), and its claim relating to attorney's fees awarded to the plaintiff pursuant to § 46a-104.[7]

## III

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The defendant next claims that the court improperly denied the defendant's motion for a directed verdict as to the plaintiff's count alleging negligent infliction of emotional distress. Specifically, the defendant argues that wrongful termination of employment itself cannot form the basis of such a claim, and the fact that the defendant's employees may have been rude during the termination process does not rise to the sort of outrageous conduct that justifies imposing tort liability.

Our standard of review of a court's denial of a motion for a directed verdict is well settled. "[Appellate] review of a trial court's refusal to direct a verdict or to render judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable

---

[7] The defendant does not argue that the amount of attorney's fees awarded by the court was excessive and admits that if a violation of General Statutes § 46a-60 (a) (7) is found, General Statutes § 46a-104 allows the award of attorney's fees.

to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . A jury's verdict should be set aside only where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles. . . . A verdict should not be set aside where the jury reasonably could have based its verdict on the evidence." (Internal quotation marks omitted.) *Mariculture Products Ltd.* v. *Certain Underwriters at Lloyd's of London*, 84 Conn. App. 688, 716–17, 854 A.2d 1100, cert. denied, 272 Conn. 905, 863 A.2d 698 (2004).

Our Supreme Court has addressed the issue of the proper standard for negligent infliction of emotional distress in the employment setting. "[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citation omitted; internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 88–89, 700 A.2d 655 (1997).

The defendant argues that mere termination of the plaintiff's employment, even if wrongful, is not sufficient to form a basis for liability for negligent infliction of emotional distress. In a comprehensive and well reasoned memorandum of decision filed May 15, 2003, the court provided a detailed explanation of its denial of the defendant's motion for a directed verdict. After

recounting much of the evidence offered at trial, as we have previously summarized, the court concluded that "there was evidence [from] which the jury reasonably could have concluded that, in effect, [the plaintiff] was told to go to work on wing one, which involved the heaviest workload, and increased the risk of the onset of cramping, or leave the premises and be fired. The jury reasonably could have found that this, in essence, was a Hobson's choice, meaning that [the plaintiff] was faced with a choice about which there was no real alternative other than to sacrifice her job rather than endanger her pregnancy."

Viewing the totality of the evidence in a light most favorable to sustaining the verdict, we conclude that the jury reasonably could have determined that the defendant engaged in unreasonable conduct during the process of terminating the plaintiff's employment. Forcing the plaintiff to choose between her own health and well-being and that of her unborn child, and her continued employment, especially in light of the substantial evidence of other available and suitable work stations, was patently unreasonable. This case is not one in which the defendant's employees were merely rude during the termination process. This is a case in which the plaintiff reasonably believed that she would suffer physical harm if she worked on the wing on which her supervisor insisted she work. We conclude that the court properly denied the defendant's motion for a directed verdict.

The judgment is affirmed.

In this opinion the other judges concurred.