DEPARTMENT OF TRANSPORTATION *v.*
COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES ET AL.
(SC 16889)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued January 15, 2004—officially released January 11, 2005

*Clare E. Kindall,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (plaintiff).

*Cheryl A. Sharp,* assistant commission counsel, with whom, on the brief, were *Philip A. Murphy, Jr.,* commission counsel, and *Charles Krich,* principal attorney, for the appellee (named defendant).

*Thomas S. Luby,* for the appellee (defendant Jayantha Mather).

*Opinion*

PALMER, J. This appeal arises from a complaint filed by the defendant, Jayantha Mather, with the named defendant, the commission on human rights and opportunities (commission), alleging that the plaintiff, the department of transportation (department), had discriminated against him, on the basis of his race and national origin, by not promoting him to the position of transportation principal engineer (principal engineer). A referee employed by the commission found in Mather's favor after concluding that Mather had established a prima facie case of discrimination and that the department's two nondiscriminatory reasons for its decision not to promote Mather, namely, that he had performed poorly during his interview for the principal

engineer position and that he lacked a professional engineer license, were pretextual. The department appealed from the referee's decision to the trial court, which concluded that the referee properly had determined, first, that Mather had established a prima facie case of discrimination and, second, that the department's purported reliance on Mather's substandard interview performance was a pretext for discrimination. The trial court also concluded, however, that Mather's failure to obtain a professional engineer license was a legitimate, nondiscriminatory reason for the department's decision not to promote him to principal engineer. The trial court then remanded the case to the referee for reconsideration of Mather's claim in light of that court's decision to sustain one of the referee's findings of pretext but not the other. The department filed this appeal,[1] claiming, inter alia, that it was entitled to judgment as a matter of law in view of the court's determination that Mather's failure to obtain a professional engineer license was a legitimate, nondiscriminatory reason for the department's decision not to promote him. We agree with the department and, therefore, reverse the judgment of the trial court.

The following relevant facts and procedural history are necessary to our resolution of this appeal. In 1997, Mather, a native of Sri Lanka, was employed by the department as a supervising engineer in the soils and foundations unit.[2] The soils and foundations unit is responsible for ensuring that the ground upon which

[1] The department appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The soils and foundations unit is one of five units in the design services division of the office of engineering within the department's bureau of engineering and highway operations. The hierarchy of positions within the soils and foundations unit is as follows: transportation principal engineer, transportation supervising engineer, transportation engineer 3, transportation engineer 2, transportation engineer 1 and transportation engineer intern.

highways, bridges and buildings are constructed is capable of supporting those structures. Thus, the engineering work performed by the soils and foundations unit is highly technical in nature and extremely important to the safety of people traversing the state's highways and bridges and people occupying state buildings.

In the summer of 1997, Theodore Batko, the principal engineer in the soils and foundations unit, announced that he was planning to retire. After Batko's announcement, Joseph Obara, the manager of the department's design services division, notified Mather, as well as two other supervising engineers, Leo Fontaine and George Gonzalez, that Batko's replacement would be appointed on a temporary basis.

For several years prior to 1997, persons holding the position of principal engineer in the soils and foundations unit were required to hold a professional engineer license.[3] Although internal discussions ensued among department officials as to whether to continue that requirement after Batko's retirement, the decision was made to do so, and Mather was notified of that decision in August, 1997. Upon learning of the decision to continue the license requirement, Mather, who previously had failed to achieve a passing score on the professional engineer license examination, indicated that he intended to retake the test. Mather subsequently took and failed the examination in October, 1997, October, 1998, and April, 1999.

In late August, 1997, Obara promoted Fontaine to principal engineer in the soils and foundations unit on a provisional basis. Obara explained that, of the three

---

[3] In 1995, Earle Munroe, the administrator of the department's office of engineering, issued a memorandum announcing the license requirement for three principal engineer positions within the office of engineering, including the position of principal engineer for the soils and foundations unit.

applicants, Fontaine was the only one who held a professional engineer license, and because such a license was required for the position, Fontaine was the only candidate eligible for the provisional appointment. In November, 1997, the department issued a job posting for the position of principal engineer in the soils and foundations unit. The posting expressly stated that the successful applicant for the position would be required to hold a professional engineer license.[4]

After the job announcement was posted, Obara advised Mather and Gonzalez that, although they could apply and interview for the permanent principal engineer position, the successful applicant would be required to hold a professional engineer license at the time of his or her appointment. Applicants were to be evaluated, however, without regard to whether they held a license at the time that they applied for the position. Only three of the six applicants for the position held a professional engineer license.

In December, 1997, interviews were conducted in accordance with the job posting. Although the interviews were conducted by a panel, Obara was the only panel member to ask questions of the applicants. During Mather's interview, Obara asked Mather about his foreign education and his work experience in England and Sri Lanka. Each panel member independently evaluated and ranked each applicant. The panel ranked Fontaine first and Mather a distant second. The panel found that Mather was deficient in technical, supervisory and oral communication skills.

---

[4] Job announcements also were posted for the position of principal engineer in three other units. None of those postings, however, indicated that a professional engineer license was a requirement for the position. By 1998, however, a professional engineer license was required for the position of principal engineer in the hydraulics and drainage unit within the design services division of the office of engineering.

Following the interviews, and after a review of the selection process by the department's affirmative action and personnel divisions, Obara announced, in January, 1998, that the panel had selected Fontaine to fill the permanent principal engineer position. Mather thereafter filed a complaint with the commission alleging, inter alia, that he had not been promoted on account of his race, that is, Asian, and national origin,[5] in violation of General Statutes §§ 46a-58 (a)[6] and 46a-60 (a),[7] and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 (a) (1994).[8]

---

[5] Mather originally alleged that the department had discriminated against him by not appointing him to the temporary principal engineer position. Mather subsequently amended his complaint to allege discrimination in the department's failure to promote him to the permanent principal engineer position.

[6] General Statutes § 46a-58 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the Constitution or laws of this state or of the United States, on account of . . . national origin . . . [or] race . . . ."

[7] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section:

"(1) For an employer . . . to refuse to hire or employ . . . any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race . . . [or] national origin . . . .

"(4) For any . . . employer . . . to . . . discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

Although § 46a-60 (a) was the subject of technical amendments in 2001; see Public Acts 2001, No. 01-28, § 8, those amendments are not relevant to the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 46a-60 (a).

We note that Mather's retaliation claim under § 46a-60 (a) (4) is not a subject of this appeal. See footnote 10 of this opinion.

[8] Title 42 of the United States Code, § 2000e-2 (a), provides in relevant part: "It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin; or

After a hearing on Mather's complaint, the referee concluded that Mather had met his burden of establishing a prima facie case of discrimination based on race and national origin.[9] The referee also concluded that the department had met its burden of producing nondiscriminatory reasons for its decision not to promote

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2 (a) (1994).

[9] We note that the analytical framework set forth by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (*McDonnell Douglas*), and its progeny is used to determine whether a complainant may prevail on a claim of disparate treatment under our state law. See, e.g., *Craine* v. *Trinity College*, 259 Conn. 625, 636–37, 791 A.2d 518 (2002). "*McDonnell Douglas* and subsequent decisions have established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases. . . . First, the [complainant] must establish a prima facie case of discrimination. . . . In order to establish a prima facie case, the complainant must prove that: (1) he is in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 505, 832 A.2d 660 (2003). Once the prima facie case has been established, the employer then must produce legitimate, nondiscriminatory reasons for its adverse employment action. See, e.g., *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). "This burden is one of production, not persuasion; it can involve no credibility assessment." (Internal quotation marks omitted.) Id. Once the employer produces legitimate, nondiscriminatory reasons for its adverse employment action, the complainant then must prove, by a preponderance of the evidence, that the employer intentionally discriminated against him. See, e.g., id., 143. "Although intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [complainant] remains at all times with the [complainant]. . . . [I]n attempting to satisfy this burden, the [complainant]—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision— must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." (Citation omitted; internal quotation marks omitted.) Id.

Mather, namely, that he had interviewed poorly and that he did not possess a professional engineer license. The referee determined, however, that both of these reasons "were pretextual and masked discriminatory intent [not to promote Mather] based on his race and national origin." Accordingly, the referee rendered a decision in Mather's favor.[10]

The department appealed to the trial court from the decision of the referee in accordance with General Statutes §§ 4-183 (a)[11] and 46a-94a (a).[12] The trial court first concluded that the referee properly had determined that Mather was qualified for the position of principal engineer in the soils and foundations unit, and, accordingly, that Mather had met his burden of establishing a prima facie case of discrimination based on race and national origin.[13] The trial court further concluded that

[10] Mather also alleged in his complaint that the department had violated § 46a-60 (a) (4) by not promoting him in retaliation for engaging in lawful, protected activities stemming from a claim of discrimination that Mather had filed against the department several years earlier. The referee rejected that claim, however, and it is not an issue on appeal.

[11] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[12] General Statutes § 46a-94a (a) provides in relevant part: "The Commission on Human Rights and Opportunities, any respondent or any complainant aggrieved by a final order of a presiding officer . . . may appeal therefrom in accordance with section 4-183. . . ."

[13] The department claimed that Mather had failed to establish a prima facie case because he was not qualified for the principal engineer position by virtue of his failure to obtain a professional engineer license. The trial court noted, however, that Mather initially had alleged that the department applied the professional engineer license requirement in a discriminatory manner and that, under these circumstances, the fact that Mather had not obtained a license did not render him "unqualified" for purposes of establishing a prima facie case under the analytical framework set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny. See *Gates* v. *BEA Associates, Inc.*, 54 Fair Empl. Prac. Cas. (BNA) 650, 651 (S.D.N.Y. 1990) (plaintiff established prima facie case when she alleged that employer's requirement of college degree, which plaintiff did not possess, "was not a bona fide qualification . . . and was

the referee reasonably had determined that the department's reliance on Mather's purportedly substandard interview performance as a reason not to promote Mather was pretextual.

The trial court, however, rejected the referee's finding of pretext with respect to the department's other proffered reason for its decision not to promote Mather, namely, that he did not possess a professional engineer license. In concluding that the finding of pretext was not reasonably supported by the referee's factual findings, the trial court noted, in particular, that the referee's "findings indicate that the department's requirement of a . . . license for the [position of principal engineer in the soils and foundations unit] has never changed—it has always been a prerequisite for the position." The trial court also noted that the findings of the referee "indicate that prior to the establishment of the [principal engineer] position, persons holding equivalent positions to [that of principal engineer] had a [professional engineer] license in the soils and foundations unit." Although the trial court acknowledged that the evidence adduced at the hearing before the referee also indicated that, on occasion, department officials had considered eliminating the license requirement for that position, the requirement consistently had been maintained. The trial court stated: "Under these circumstances, the court cannot concur in the referee's conclusion that the [professional engineer] license requirement for the soils and foundations unit was applied in an inconsistent or discriminatory manner or was given by the department as a false reason for the decision not to appoint Mather."

Notwithstanding this determination, the trial court stated that it "must question whether the prima facie case of discrimination combined with the [one] legiti-

added solely to exclude her from consideration [for the position]"); *Robertson* v. *Mylan Laboratories, Inc.*, 176 Vt. 356, 368, 848 A.2d 310 (2004) (plaintiff established prima facie case when she alleged that employer's requirement of doctorate degree, which plaintiff was close to obtaining, was implemented for purpose of giving position to supervisor's "hand-picked male candidate").

mate finding of pretext . . . is enough to sustain the referee's finding of intentional discrimination." The trial court therefore remanded the case for a determination by the referee as to "whether Mather's prima facie case, taken with the finding of pretext that the court has approved, is sufficient to find intentional discrimination by the department." The trial court also directed the referee, on remand, to "consider whether the requirement of a professional engineer license, the legitimate reason advanced by the department, was independent [of] or intertwined with the pretextual reason . . . ."

On appeal, the department claims, inter alia, that the trial court improperly remanded the case to the referee in light of that court's determination that Mather's failure to obtain a professional engineer license was a legitimate, nondiscriminatory reason for the department's decision not to promote him to the position of principal engineer. Although neither Mather nor the commission challenges the trial court's rejection of the referee's finding of pretext with respect to the professional engineer license requirement and Mather's failure to obtain a license, they both agree with the trial court that a remand is necessary to allow the referee to determine whether the prima facie case established by Mather, in combination with the finding of pretext that was sustained by the trial court, supports a finding that the department intentionally discriminated against Mather on the basis of his race and national origin.

We agree with the department that it is entitled to judgment as a matter of law in light of the trial court's conclusion that Mather's failure to obtain a professional engineer license constituted a legitimate, nondiscriminatory reason to deny Mather the promotion to the principal engineer position.[14] In *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 209,

[14] The department also claims that the trial court improperly failed to address its contention that the commission lacked jurisdiction to adjudicate Mather's Title VII claim. We do not reach this issue in light of our conclusion that the department is entitled to judgment as a matter of law.

147 L. Ed. 2d 105 (2000), the United States Supreme Court explained that, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation [offered by the employer for the adverse employment action] that the employer is dissembling to cover up a discriminatory purpose. . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." (Citations omitted.) Id., 147. The court noted, however, that "[t]his is not to say that such a showing by the [complainant] will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the [complainant] has established a prima facie case and set forth sufficient evidence to reject the [employer's] explanation, no rational fact-finder could conclude that the action was discriminatory. *For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision* . . . ." (Emphasis added.) Id., 148.

As we have indicated, neither Mather nor the commission has contested the trial court's determination that, contrary to the finding of the referee, Mather's failure to obtain a professional engineer license was a legitimate, nondiscriminatory reason for the department's decision to deny him the promotion to the principal engineer position. Thus, because it is uncontested that Mather's attainment of the professional engineer license was an absolute prerequisite to his promotion, and because Mather did not obtain that license, he simply was not eligible for the promotion. In other words, because the record conclusively reveals a legitimate, nondiscriminatory reason for the department's decision, Mather cannot prevail on his claim that he was the victim of unlawful discrimination.[15] Id.

---

[15] Thus, Mather's contention that the trial court properly remanded the case to the referee under the rule applicable to "mixed motive" cases is unavailing. "A 'mixed-motive' case exists when an employment decision is motivated by both legitimate and illegitimate reasons. . . . In such instances,

In remanding the case for further proceedings before the referee, the trial court relied on *Russell* v. *Acme-Evans Co.*, 51 F.3d 64 (7th Cir. 1995), in which the Seventh Circuit Court of Appeals explained, in dictum, that, "[t]here may be cases in which the multiple grounds offered by the [employer] for the adverse action of which the [complainant] complains are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the [complainant] could [prevail]." Id., 70. *Russell* is inapposite because, as we have explained, the fact that Mather did not obtain a professional engineer license was an absolute bar to his promotion and, therefore, served as an independent, nonpretextual reason for the department's decision not to promote him. In such circumstances, there is no likelihood of any interrelationship between any pretextual[16] and nonpretextual reasons for the department's adverse employment decision.

The judgment is reversed in part and the case is remanded with direction to render judgment for the department.

In this opinion the other justices concurred.

a [complainant] must demonstrate that the employer's decision was motivated by one or more prohibited statutory factors. Whether through direct evidence or circumstantial evidence, a [complainant] must 'submit enough evidence that, if believed, could reasonably allow a [fact finder] to conclude that the adverse employment consequences resulted "because of" an impermissible factor.' " (Citation omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 105, 671 A.2d 349 (1996). Mather's failure to obtain a professional engineer license—the legitimate, nondiscriminatory reason for the department's decision not to promote him to the principal engineer position—constituted an absolute bar to the promotion. Under these circumstances, Mather simply cannot establish that he was not promoted *because of* some other, impermissible reason.

[16] The department also contends that the trial court improperly sustained the referee's finding of pretext with respect to the department's contention that it had denied Mather the promotion on the basis of his substandard interview performance. We express no view on the validity of that determination in light of our conclusion that the department is entitled to judgment as a matter of law.