******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANNE M. AMATO *v.* THE HEARST CORPORATION
(AC 35803)

Gruendel, Alvord and Bear, Js.

*Argued February 21—officially released April 29, 2014*

(Appeal from Superior Court, judicial district of New Haven, Frechette, J.)

*John R. Williams*, for the appellant (plaintiff).

*Aryn J. Sobo*, pro hac vice, with whom were *Tal A. Kadar* and, on the brief, *A. Robert Fischer*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Anne M. Amato, appeals from the judgment of the trial court rendered in favor of the defendant, The Hearst Corporation, following the granting of the defendant's motion to strike her complaint. The complaint alleged that the defendant discriminated against the plaintiff on the basis of age, in violation of General Statutes § 46a-60 of the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq. On appeal, the plaintiff claims that the court improperly (1) concluded that it was bound by federal precedent in interpreting the provisions of the act, and (2) struck the complaint because she had alleged a valid cause of action. We affirm the judgment of the trial court.

The following procedural history and facts, as alleged in the complaint, are relevant to our resolution of the issues on appeal. The plaintiff was born in 1948 and had worked at The Connecticut Post, a newspaper then owned by the defendant, for more than twenty years. She had been employed by the defendant for ten years, most recently as a senior reporter covering the valley area of the state. The plaintiff's job evaluations consistently characterized her performance as satisfactory or better than satisfactory.

On October 7, 2011, the defendant informed the plaintiff that she "had been placed on a Performance Improvement Plan subjecting her to termination on December 7, 2011." It is also alleged in the complaint that between October 7, and December 31, 2011, three additional senior reporters with outstanding employment records and twenty or more years of service received similar threats of termination. The defendant, by this conduct, was attempting to remove the older employees from its workforce without regard for their skill or performance history. In response to the defendant's actions, the plaintiff filed a complaint of age discrimination with the Connecticut Commission on Human Rights and Opportunities (commission) on December 1, 2011. After the complaint had been filed with the commission, the defendant ended or suspended its actions against older employees, and neither the plaintiff nor any of the three other senior reporters were terminated from employment.

On September 7, 2012, the plaintiff commenced this age discrimination action against the defendant, alleging that its conduct "placed the plaintiff in great fear of losing her employment and caused her to suffer severe emotional distress."[1] On November 8, 2012, the defendant filed a motion to strike the plaintiff's complaint in its entirety for its failure to state a claim upon which relief could be granted. The court heard argument on March 18, 2013, and granted the defendant's motion in a memorandum of decision issued on May 8, 2013. In

the court's decision, it concluded that the plaintiff failed to allege that she suffered an adverse employment action as a result of being placed on a performance improvement plan and, accordingly, failed to plead the elements of a prima facie case of age discrimination. The plaintiff did not file a new pleading; see Practice Book § 10-44; and the court rendered judgment in favor of the defendant. This appeal followed.

The standard of review in an appeal from the granting of a motion to strike is well established. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . For the purpose of ruling upon a motion to strike, the facts alleged in a complaint, though not the legal conclusions it may contain, are deemed to be admitted. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted; internal quotation marks omitted.) *Metcoff* v. *Lebovics*, 123 Conn. App. 512, 516, 2 A.3d 942 (2010).

I

The plaintiff's first claim is that the trial court "erred in holding that it is bound by federal case law in interpreting the [act]." The plaintiff argues that the court improperly relied on federal cases in determining whether being placed on a performance improvement plan constituted an adverse employment action. Acknowledging that there is no Connecticut appellate case law on this precise issue, the plaintiff claims that the court was "not locked into interpretations by lower federal appellate courts of different, albeit similarly worded, federal statutes when defining for the first time the meaning of [the act]."[2]

We first note that the court did *not* state that it was *bound* by federal case law in reaching its determination as to the meaning of the term "adverse employment action."[3] The court, quoting from our Supreme Court's decision in *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 689, 41 A.3d 1013 (2012), stated that "Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws." (Internal quotation marks omitted.) The court accurately quoted from *Patino*, and there is no indication in its decision that the court felt constrained to follow federal precedent in this case. It is apparent from the decision that the court was *guided* by federal case law in reaching its conclusion that the placement of the plaintiff on a performance improvement plan did not constitute an adverse employment action under the circumstances alleged in the complaint, and we conclude that it was

appropriate that the court followed federal precedent.

"In interpreting our antidiscrimination and antiretaliation statutes, we look to federal law for guidance. In drafting and modifying the Connecticut Fair Employment Practices Act . . . our legislature modeled that act on its federal counterpart, Title VII [of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq.] . . . and has sought to keep our state law consistent with federal law in this area."[4] (Internal quotation marks omitted.) *Eagen* v. *Commission on Human Rights & Opportunities*, 135 Conn. App. 563, 579, 42 A.3d 478 (2012).

In order to prevail on a claim of age discrimination based on disparate treatment,[5] the plaintiff first must establish a prima facie case of discrimination.[6] "To establish a prima facie case of discrimination, the complainant must demonstrate that (1) he is in the protected class; (2) he was qualified for the position; (3) *he suffered an adverse employment action*; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination. . . . The level of proof required to establish a prima facie case is minimal and need not reach the level required to support a jury verdict in the plaintiff's favor." (Citation omitted; emphasis added; internal quotation marks omitted.) *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 220, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008).

In the present case, the court determined that the plaintiff failed to plead the elements of a prima facie case because she failed to allege that she suffered any adverse employment action as a result of being placed on a performance improvement plan. In reaching that conclusion, the court looked to federal court decisions that have considered whether a particular action or conduct by an employer would constitute an adverse employment action. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. . . . To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." (Citation omitted; internal quotation marks omitted.) *Brown* v. *American Golf Corp.*, 99 Fed. Appx. 341, 343 (2d Cir. 2004). "[A]n adverse employment action [has been defined] as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." (Internal quotation marks omitted.) *Reynolds* v. *Dept. of the Army*, 439 Fed. Appx. 150, 153 (3d Cir. 2011).

Referencing *Brown* and *Reynolds* in its decision, the trial court determined that placement of an employee on a performance improvement plan in and of itself would not constitute an adverse employment action as

that term is defined in federal case law. We conclude that the court's decision to follow the federal courts' interpretation in this case was not improper because, as previously discussed, Connecticut case law clearly provides that our courts may look to federal court precedent for guidance in enforcing Connecticut's antidiscrimination statutes.[7] See, e.g., *Patino* v. *Birken Mfg. Co.*, supra, 304 Conn. 689; *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 164, 717 A.2d 1254 (1998); *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996); *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 470, 559 A.2d 1120 (1989); *Eagen* v. *Commission on Human Rights & Opportunities*, supra, 135 Conn. App. 579. Accordingly, the plaintiff's first claim fails.

II

The plaintiff's next claim is that, even applying federal law to the facts alleged in this case, her complaint states a valid cause of action for age discrimination. The plaintiff focuses on the following allegations in her complaint: (1) she was placed on a performance improvement plan; (2) she was told she was subject to termination on a specific date; (3) the defendant had established a pattern of terminating or threatening to terminate its older employees; and (4) the defendant's conduct placed her in fear of losing her employment and caused her to suffer emotional distress. She argues that those allegations, collectively, were sufficient to state a claim for age discrimination. We disagree.

As discussed by the court in its memorandum of decision, the federal cases of *Reynolds* and *Brown* specifically addressed performance improvement plans in the context of age discrimination claims. In *Reynolds*, the United States Court of Appeals for the Third Circuit, in agreeing with other federal circuit courts, concluded that being placed on a performance improvement plan is not an adverse employment action absent accompanying changes to pay, benefits or employment status. *Reynolds* v. *Dept. of the Army*, supra, 439 Fed. Appx. 153–54 In reaching that conclusion, the court in *Reynolds* reasoned: "[Performance improvement plans] are typically comprised of directives relating to an employee's preexisting responsibilities. In other words, far from working a change in employment status, a [performance improvement plan] is a method of conveying to an employee the ways in which that employee can better perform the duties that he or she already has." Id., 153. The plaintiff's claim in *Reynolds* failed because he did not demonstrate that his performance improvement plan was accompanied by an adverse change in the conditions or terms of his employment. Id.

Here, the trial court reasonably could have found that the holdings in the federal cases, which addressed the precise issue in this case, were persuasive. In reviewing the allegations in the plaintiff's complaint, the court

correctly determined that she failed to allege any adverse material changes in the terms or conditions of her employment as a result of being placed on the performance improvement plan. She did not allege that her salary decreased or that she had fewer benefits or that her employment status changed. Although she argues that she was given a specific termination date, she acknowledged that she was not discharged from employment.[8] In the absence of such allegations, the plaintiff failed to allege an adverse employment action and, accordingly, failed to plead all of the requisite elements of a prima facie case of age discrimination.

The judgment is affirmed.

[1] The commission issued a release of jurisdiction on June 26, 2012.

[2] General Statutes § 46a-60 (a) (1) provides in relevant part: "It shall be a discriminatory practice . . . [f]or an employer . . . except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . age . . . ."

The relevant federal provision in the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., provides in relevant part: "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623 (a) (1) (2012).

[3] Connecticut courts are not bound by federal law regarding discriminatory employment practices when interpreting Connecticut's antidiscrimination statutes. *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 470, 559 A.2d 1120 (1989); *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 199–200, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008).

[4] Title VII claims and Age Discrimination in Employment Act claims are analyzed under the same framework. See *Scaria* v. *Rubin*, 117 F.3d 652, 653 (2d Cir. 1997).

[5] "[D]isparate treatment simply refers to those cases where certain individuals are treated differently than others. . . . The principal inquiry of a disparate treatment case is whether the plaintiff was subjected to different treatment because of his or her protected status." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 104, 671 A.2d 349 (1996).

[6] "[T]he analytical framework set forth by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (*McDonnell Douglas*), and its progeny is used to determine whether a complainant may prevail on a claim of disparate treatment under our state law. See, e.g., *Craine* v. *Trinity College*, 259 Conn. 625, 636–37, 791 A.2d 518 (2002). '*McDonnell Douglas* and subsequent decisions have established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases. . . . First, the [complainant] must establish a prima facie case of discrimination. . . . In order to establish a prima facie case, the complainant must prove that: (1) he is in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination.' . . . *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 505, 832 A.2d 660 (2003). Once the prima facie case has been established, the employer must then produce legitimate, nondiscriminatory reasons for its adverse employment action. See, e.g., *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). 'This burden is one of production, not persuasion; it can involve no credibility assessment.' . . . Id. Once the employer produces legitimate, nondiscriminatory reasons for its adverse employment action, the complainant then must prove, by a preponderance of the evidence, that the employer intentionally discriminated against him. See, e.g., id., 143. 'Although intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [complainant]

remains at all times with the [complainant]. . . . [I]n attempting to satisfy this burden, the [complainant]—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination.' . . . Id." *Dept. of Transportation* v. *Commission on Human Rights & Opportunities*, 272 Conn. 457, 463 n.9, 863 A.2d 204 (2005).

[7] "In construing a Connecticut statute that is similar to federal law, we often turn to decisions construing the federal law for guidance." *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, 273 Conn. 373, 386, 870 A.2d 457 (2005). The antidiscrimination on the basis of age provision in the act and the provision in the Age Discrimination in Employment Act are nearly identical. See footnote 2 of this opinion.

[8] "[I]n the nonacademic setting termination of employment does not ensue inevitably once notification of termination has been given." (Internal quotation marks omitted.) *Vollemans* v. *Wallingford*, supra, 103 Conn. App. 214.