******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

DARLENE BOUCHER *v.* SAINT FRANCIS GI
ENDOSCOPY, LLC
(AC 40597)

Alvord, Prescott and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for, inter alia,
employment discrimination in violation of the Connecticut Fair Employ-
ment Practices Act (§ 46a-51 et seq.), claiming that the defendant, her
former employer, retaliated against her and constructively discharged
her when she complained about being sexually harassed by a coworker,
C. The defendant claimed that it did not take any action against the
plaintiff that constituted an adverse employment action. The trial court
granted the defendant's motion for summary judgment and rendered
judgment in favor of the defendant, concluding, inter alia, that the plain-
tiff had failed to establish a prima facie case of employment discrimina-
tion or retaliation, from which the plaintiff appealed to this court. *Held*
that the trial court properly granted the defendant's motion for summary
judgment, the plaintiff having failed to allege facts that, if proven, would
establish an adverse employment action by the defendant: the plaintiff
did not establish a genuine issue of material fact as to whether the
defendant intentionally created an intolerable work atmosphere that
forced her to quit involuntarily to support her claim of constructive
discharge, as there was no evidence that the defendant knew of C's
actions prior to the plaintiff's disclosure of them to her supervisor, H,
the plaintiff did not claim that the defendant ordered or encouraged C's
actions, nor did she make any other viable claim that would constitute
an intolerable work atmosphere, the plaintiff presented no evidence
from which it could be inferred that the defendant deliberately sought
to force the plaintiff to quit, and, in fact, it was undisputed that H
attempted to stop the plaintiff from quitting; moreover, even if the
plaintiff's interactions with H transpired as she described in her deposi-
tion, the defendant's actions did not rise to the level needed to show
constructive discharge, because once H was informed of the complaint,
she investigated the plaintiff's concerns, the possibility of the defendant
being able to provide the plaintiff with a remedy was eliminated three
days after the complaint was received when the plaintiff abruptly quit
her job, H never issued the plaintiff a warning, and H's request for the
plaintiff to recount her story in the course of her investigation did not
constitute a materially adverse employment action.

Argued October 16, 2018—officially released January 22, 2019

*Procedural History*

Action to recover damages for, inter alia, alleged
employment discrimination, and for other relief,
brought to the Superior Court in the judicial district of
Hartford, where the court, *Moukawsher, J.*, granted the
defendant's motion for summary judgment and ren-
dered judgment thereon, from which the plaintiff
appealed to this court. *Affirmed.*

*James V. Sabatini*, for the appellant (plaintiff).

*Christopher A. Klepps*, with whom was *Christopher
L. Brigham*, for the appellee (defendant).

*Scott Madeo* filed a brief for the Commission on
Human Rights and Opportunities as amicus curiae.

*Opinion*

PRESCOTT, J. In this employment discrimination action, the plaintiff, Darlene Boucher, appeals from the summary judgment rendered by the trial court in favor of her employer, the defendant, Saint Francis GI Endoscopy, LLC, on the plaintiff's complaint, which alleged that her employer retaliated against her when she complained about being sexually harassed by a coworker. See General Statutes § 46a-60 (b) (4).[1] On appeal, the plaintiff claims that the court improperly granted the defendant's motion for summary judgment because there is a genuine issue of material fact as to her retaliation claim.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. The defendant employed the plaintiff, beginning in February, 2012, as a part-time office assistant. She eventually became a full-time insurance verification specialist. The plaintiff's immediate supervisor was Kathleen Hull.

On more than one occasion, Jason Crespo, a coworker of the plaintiff, made comments to the plaintiff regarding her appearance at work, including "you look beautiful" and "you look hot." Crespo also thrusted his hips at the plaintiff while stating that she was hot. On another occasion, Crespo hit the plaintiff's torso with a rubber glove. Crespo also sent the plaintiff a text message regarding the plaintiff's husband on Easter weekend, although the plaintiff cannot recall what the text message said and immediately deleted it. Finally, during August, 2013, Crespo forced the plaintiff into a utility closet, where he pushed his body against the plaintiff's and she could feel his penis through his clothes. At some point, the plaintiff told Crespo to stop this behavior. The plaintiff did not report Crespo's conduct to Hull until approximately six months after the incident in the closet.

On the morning of January 10, 2014, the plaintiff made a complaint about Crespo to Hull. Hull and the plaintiff met for about an hour. The plaintiff told Hull about her interactions with Crespo, including the incident in the utility closet, the text message over Easter weekend, and Crespo's comments about the plaintiff's appearance. January 10, 2014, was a Friday, and Hull was leaving work early for a weekend vacation. Hull told the plaintiff that she would interview all parties and get back to the plaintiff the following Monday, January 13, 2014. The plaintiff did not expect that Hull would be interviewing anyone over the weekend.

Hull sent the plaintiff a text message on Sunday, January 12, 2014, in order to ask her more questions about her complaint and what had transpired. Hull told the plaintiff that she would speak with Dawn DiPinto, a

coworker and friend of the plaintiff, about the situation. After exchanging text messages regarding the complaint, the plaintiff requested that they wait until the following day to discuss the complaint in further detail. Hull responded, "Wow."

On the following day, Monday, January 13, 2014, after speaking with DiPinto, Hull sent the plaintiff an e-mail requesting that the plaintiff come to her office.[3] Once in her office, Hull told the plaintiff that she had spoken with DiPinto and that the plaintiff's story "[did not] add up." Hull then requested that the plaintiff recount her complaint from the beginning. Hull also told the plaintiff that she was going to give her a warning. The plaintiff, however, was not aware of the nature of the warning, or why she would get a warning. A warning was never issued.

The plaintiff then told Hull that she did not know what else to say and stood up. Hull asked the plaintiff what she was doing, asked her to sit down, and asked her if she was quitting. The plaintiff replied that she was quitting. Hull asked the plaintiff to sit down again, grabbed her arms, and said, "Are you sure you want to do this?" The plaintiff told Hull to get off of her, walked out, and filed a police report against Hull for assault. Following an investigation, the police did not arrest Hull. After the plaintiff left the workplace on January 13, 2014, Hull spoke with Crespo, continuing her investigation of the plaintiff's complaint.

The plaintiff commenced this action on April 7, 2016. The plaintiff filed a three count complaint setting forth facts regarding her interactions with Crespo and Hull. The first count alleged that the defendant discriminated against the plaintiff on the basis of gender in violation of § 46a-60 (b) (1). The second count alleged that the defendant violated § 46a-60 (b) (8) by creating a hostile work environment through its failure to stop Crespo's sexual harassment of the plaintiff. The third count alleged that, in violation of § 46a-60 (b) (4), the defendant retaliated against her for complaining about the sexual harassment committed by Crespo.

The defendant filed an answer to the complaint denying, or leaving the plaintiff to her proof, with respect to all allegations of discrimination. The defendant further alleged, as affirmative defenses, that (1) it exercised reasonable care to prevent and correct sexual harassment in the workplace and (2) the plaintiff failed to mitigate any damages that she allegedly sustained.

The defendant filed a motion for summary judgment on March 15, 2017, stating that there was no genuine issue of material facts as to any of the plaintiff's claims and that the defendant was entitled to summary judgment as a matter of law. The defendant also filed a memorandum of law in support of the motion for summary judgment. The defendant argued in its memoran-

dum that the plaintiff failed to establish a genuine issue of material fact regarding the prima facie elements of each cause of action in her complaint. Specifically, regarding the plaintiff's retaliation claim, the defendant asserted that it took no adverse employment action against the plaintiff after she reported Crespo's conduct and, thus, had not retaliated against her. With its memorandum, the defendant submitted, inter alia, sworn affidavits from Hull and Crespo, and an uncertified copy of a text message exchange between the plaintiff and Hull.[4]

The plaintiff filed an objection to the motion for summary judgment on May 30, 2017. In her objection, the plaintiff argued that she had raised a genuine issue of material fact with respect to each element of a prima facie retaliation claim and that the defendant's response to the sexual harassment complaint constituted an adverse employment action. Specifically, the plaintiff argued that the defendant constructively discharged her in retaliation for complaining about sexual harassment. The plaintiff also asserted that Hull's (1) demeanor in her meeting with the plaintiff, (2) opinion that her story "did not add up," (3) request that she recount what had happened, and (4) statement that the plaintiff could receive a warning, constituted an adverse employment action.

The court granted the motion for summary judgment in favor of the defendant as to all three counts of the plaintiff's complaint on June 19, 2017. In its memorandum of decision, the court concluded that, viewing the facts in the light most favorable to the plaintiff, she failed to raise a genuine issue of material fact regarding various prima facie elements of each cause of action. This appeal followed.

We first set forth the relevant standards that govern our review of a court's decision to grant a defendant's motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide

issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Barbee* v. *Sysco Connecticut, LLC*, 156 Conn. App. 813, 817–18, 114 A.3d 944 (2015).

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . .

"An important exception exists, however, to the general rule that a party opposing summary judgment must provide evidentiary support for its opposition . . . . On a motion by [the] defendant for summary judgment, the burden is on [the] defendant to negate each claim as framed by the complaint . . . . It necessarily follows that it is only [o]nce [the] defendant's burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial. . . . Accordingly, [w]hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue." (Internal quotation marks omitted.) Id., 818–19.

On appeal, the plaintiff claims that the court improperly granted the defendant's motion for summary judgment because a genuine issue of material fact existed as to whether the defendant retaliated against her. Specifically, the plaintiff asserts that she raised a genuine issue of material fact regarding retaliation by proffering facts that tend to demonstrate that she was constructively discharged from her employment. In addition to constructive discharge, the plaintiff claims that Hull's behavior toward her in their January 13, 2014 meeting also raised a genuine issue of material fact regarding retaliation. The defendant argues that the plaintiff's retaliation claim fails because, as a matter of law, the defendant did not take any action against her that constitutes an adverse employment action. We agree with the defendant that it is entitled to summary judgment because the plaintiff failed to allege facts that, if proven, would establish an adverse employment action.

The plaintiff's claim of discrimination in employment arises under the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq. Our Supreme Court previously has determined that "Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws." (Internal

quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 689, 41 A.3d 1013 (2012). Therefore, "[i]n interpreting our antidiscrimination and antiretaliation statutes, we look to federal law for guidance." (Internal quotation marks omitted.) *Amato* v. *Hearst Corp.*, 149 Conn. App. 774, 779, 89 A.3d 977 (2014).

Section 46a-60 (b) (4)[5] prohibits an employer from discharging, expelling, or otherwise discriminating against, any person because such person has filed a complaint regarding a discriminatory employment practice pursuant to § 46a-82 (a),[6] such as sexual harassment, as defined by § 46a-60 (b) (8).[7] To establish a prima facie case of retaliation, a plaintiff must show four elements: (1) that he or she participated in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action against him or her; and (4) a causal connection between the protected activity and the adverse employment action. *McMenemy* v. *Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001). For the purposes of a retaliation claim, an adverse action must be "materially adverse" or "harmful to the point that [it] could well dissuade a reasonable [employee] from making or supporting a charge of discrimination." (Internal quotation marks omitted.) *Hicks* v. *Baines*, 593 F.3d 159, 165 (2d Cir. 2010). By considering the perspective of a *reasonable* employee, we apply an objective standard. Id. "[T]he alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." Id. Further, the retaliatory act need not bear on the terms or conditions of employment. Id., 169.

Nevertheless, to be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." (Citations omitted; internal quotation marks omitted.) *Terry* v. *Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). We first reject the plaintiff's claim that she has raised a genuine issue of material fact as to whether she was constructively discharged by the defendant. "Normally, an employee who resigns is not regarded as having been discharged, and thus would have no right of action for [wrongful] discharge. . . . Through the use of constructive discharge, the law recognizes that an employee's voluntary resignation may be, in reality, a dismissal by an employer. . . . Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, *intentionally* creates an intolerable work atmosphere that forces an employee to quit invol-

untarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. . . . Accordingly, a claim of constructive discharge must be supported by more than the employee's subjective opinion that the job conditions have become so intolerable that he or she was forced to resign." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 178, 717 A.2d 1254 (1998). Furthermore, "[A] constructive discharge cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer" or that "the employee's working conditions were difficult or unpleasant." *Spence* v. *Maryland Casualty Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993). "Unless conditions are beyond ordinary discrimination, a complaining employee is expected to remain on the job while seeking redress." (Citation omitted; internal quotations omitted.) *Pennsylvania State Police* v. *Suders*, 542 U.S. 129, 147, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004).

The plaintiff has not established a genuine issue of material fact as to whether the defendant *intentionally* created an intolerable work atmosphere that forced her to quit involuntarily. First, there is no evidence that the defendant knew of Crespo's actions against her prior to the plaintiff's disclosure of them to Hull on January 10, 2014. The plaintiff does not claim that the defendant ordered or encouraged Crespo's actions against her. She made no other viable claim that would constitute an intolerable work atmosphere. Second, the plaintiff has presented no evidence from which it can be inferred that the defendant deliberately sought to force the plaintiff to quit. According to the plaintiff's own account, when the plaintiff quit, her supervisor tried to prevent her from quitting, asking "are you sure you want to do this?" This evidence directly negates the constructive discharge requirement that the defendant *intentionally* create an intolerable work environment to force the employee to quit; in fact, it is undisputed that Hull attempted to stop the plaintiff from quitting.

Even if the meeting with Hull occurred as the plaintiff described in her deposition, the defendant's actions do not rise to the level needed to demonstrate constructive discharge. See *Noel* v. *AT & T Corp.*, 774 F.3d 920, 921 (8th Cir. 2014) (plaintiff failed to show constructive discharge because he produced no evidence that employer deliberately made working conditions so intolerable that reasonable person would have been compelled to resign); *Miller* v. *Praxair, Inc.*, United States Court of Appeals, Docket No. 09:2962CV (CFD) (2d Cir. November 24, 2010) (routine disagreements with supervisors and mild criticisms insufficient to meet "demanding" standard for constructive discharge); *Hill* v. *Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991) (formal written reprimand and supervisor

criticism do not constitute constructive discharge). The working conditions in this case were not so difficult or unpleasant that a reasonable person in the plaintiff's shoes would have resigned.

Additionally, an employee claiming constructive discharge under retaliation must give the employer a reasonable chance to remedy any intolerable working conditions before quitting. *Howard* v. *Burns Bros., Inc.*, 149 F.3d 835, 842 (8th Cir. 1998). Here, once informed of the complaint, the plaintiff's supervisor took swift action to investigate her concerns, going so far as to communicate with the plaintiff over the weekend, while the supervisor was on vacation. The possibility of providing the plaintiff with a remedy, however, was eliminated, three days after the complaint was received, by the plaintiff abruptly quitting her job. The defendant was not given an opportunity to consider and, if necessary, address the plaintiff's claims.

In support of her contention that she raised a genuine issue of material fact as to constructive discharge, the plaintiff relies heavily on *Chertkova* v. *Connecticut General Life Ins. Co.*, 92 F.3d 81 (2d Cir. 1996), in which the United States Court of Appeals for the Second Circuit reversed the decision of the United States District Court for the District of Connecticut to render summary judgment in favor of the defendant on a constructive discharge claim. *Chertkova*, however, is distinguishable from the present case.

The plaintiff in *Chertkova* had been put on probation for "communication" reasons. Id., 85. "[The] [p]laintiff's evidence [suggested] her supervisor engaged in a pattern of baseless criticisms, said she would not be around, and that she would be fired instantly if she did not meet certain ambiguous behavior objectives." (Internal quotation marks omitted.) Id., 89. Another female worker, and no male workers, had been discharged for the same baseless reasons. Id., 85. "[The plaintiff] presented proof that documenting a pattern to get rid of an unwanted employee was a recognized practice at the company . . . ." Id., 93. The court stated that, "[t]he evidence . . . would . . . allow a factfinder to conclude that [the plaintiff's supervisors] *deliberately* created unbearable working conditions for the purpose of forcing Chertkova out of the company." (Emphasis in original.) Id., 90. In the present case, the plaintiff has demonstrated no such pattern or intentional behavior by the defendant. Accordingly, we disagree with the plaintiff that she raised a genuine issue of material fact as to whether she had been constructively discharged by the defendant.

We turn next to the plaintiff's assertion that the evidence presented regarding the actions of Hull at the meeting on January 13, 2014, either individually or collectively, were sufficient to raise a genuine issue of material fact that the defendant took an adverse

employment action against her. Specifically, the plaintiff contends that "[the] [d]efendant's response to [the] [p]laintiff's sexual harassment complaint was harmful to the point that it could have dissuaded a reasonable worker from making or supporting a charge of discrimination." See *Hicks* v. *Baines*, supra, 593 F.3d 165.

Hull's actions, however, individually or in the aggregate, do not constitute a materially adverse employment action. First, it is undisputed that the warning threatened by Hull was never issued. The plaintiff has failed to cite to a single case in which a court has held that the threat of a warning could, by itself, constitute a materially adverse employment action. In repeated cases, in similar factual contexts, courts have rejected the argument that certain actions by employers, unaccompanied by an adverse change in employment conditions, are enough to constitute an adverse employment action.

For example, in *Amato* v. *Hearst Corp.*, supra, 149 Conn. App. 774, the plaintiff employee alleged that her employer had discriminated against her on account of her age. Id., 776. The plaintiff had worked for the defendant for ten years when the defendant put multiple senior employees, including the plaintiff, on a "[p]erformance [i]mprovement [p]lan" that subjected them to future termination. Id. In response to the plan, the plaintiff filed a complaint alleging age discrimination with the Connecticut Commission on Human Rights and Opportunities (commission). Id. After the complaint had been filed with the commission, the defendant ended or suspended its actions against the older employees, and neither the plaintiff nor any of the other senior employees were terminated. Id., 776–77. This court held that the employee failed to allege any adverse material changes in the terms or conditions of her employment, such as termination, as a result of being placed on the performance improvement plan, and therefore did not establish a prima facie case of discrimination. Id., 783.

Similarly, in *Tepperwien* v. *Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 560 (2d Cir. 2011), the United States Court of Appeals for the Second Circuit affirmed the decision of the United States District Court for the Southern District of New York to grant a motion for summary judgment in favor of the defendant on a constructive discharge claim. In *Tepperwien*, an employee made a complaint to his union, which in turn informed management, about sexual harassment. Id., 561. After the employee made his complaint, the employee was threatened by a supervisor that he would be walked off site and his employment would be terminated. Id., 571. Neither of these threats, however, were carried out. Id. Therefore, the Second Circuit found that these actions did not cause injury because they were "empty verbal threats" and, therefore, were not materially

adverse employment actions. (Internal quotation marks omitted.) Id.

In *Balderrama* v. *Kraft Foods North America, Inc.*, 307 F. Supp. 2d 1012, 1013 (N.D. Ill. 2004), the plaintiff alleged that she complained to her employer about sexual harassment and nothing was done. She then filed a complaint of sex discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). Id. The plaintiff alleged that the employer gave her a written warning in retaliation for filing the EEOC charge. Id. The United States District Court for the Northern District of Illinois, Eastern Division rendered summary judgment in favor of the employer on the plaintiff's claim of retaliation, concluding that a written warning did not constitute an adverse employment action under Seventh Circuit case law, as it did not result in a significantly negative alteration in the plaintiff's workplace environment. Id., 1014.

Further, Hull's purportedly angry demeanor during her January 13, 2014 meeting with the plaintiff, if proven, does not create a materially adverse employment action. In *Tepperwien* v. *Entergy Nuclear Operations, Inc.*, supra, 663 F.3d 565, 571, a supervisor's stare at an employee during an employee meeting while commenting that "[t]here are people . . . that don't like each other," "[t]here are people here I don't like," after the employee had made a sexual harassment complaint, was not considered an adverse employment action. (Internal quotation marks omitted.) Hull's actions, viewed in the light most favorable to the plaintiff, are no more harmful or intimidating than those in *Tepperwien* and would not dissuade a reasonable employee from making or supporting a charge of discrimination. See *Burlington Northern & Santa Fe Railway Co.* v. *White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ("personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable" [internal quotation marks omitted]).

Finally, Hull's request for the plaintiff to recount her story in the course of her investigation does not constitute a materially adverse employment action. It was appropriate for Hull to request that the plaintiff repeat or clarify her complaint. This is particularly true given that Hull had interviewed DiPinto prior to meeting with the plaintiff and needed to ensure that she understood the plaintiff's claims in light of the additional information she had received. Requesting an employee to repeat a complaint for the employer's investigation would not dissuade a reasonable worker from making or supporting a charge of discrimination.

In sum, the plaintiff failed to demonstrate that a genuine issue of material fact existed with respect to her retaliation claim because the facts proffered, even if established, would not constitute an adverse employment action. Accordingly, we conclude that the defen-

dant was entitled to summary judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 46a-60 was amended by No. 17-118, § 1, of the 2017 Public Acts, which added a new subsection (a) regarding definitions and redesignated the existing subsections (a) and (b) as subsections (b) and (c). Therefore, although the parties and the trial court cite to the earlier version of the statute, for purposes of clarity, we refer to the current revision of the statute.

[2] In addition to the count alleging retaliation, the trial court also granted the motion for summary judgment in favor of the defendant on the plaintiff's counts alleging gender discrimination and creation of a hostile work environment. The plaintiff, however, only opposed summary judgment on the retaliation count, effectively abandoning the other counts.

[3] The meeting on January 13, 2014, that took place between the plaintiff and Hull was not a surprise to the plaintiff. She had specifically requested it.

[4] A copy of the text messages was attached to the defendant's memorandum of law in support of the motion for summary judgment, but was not certified as a true and accurate copy. The plaintiff, however, raised no objection to the authenticity of the text messages in her opposition to the motion for summary judgment and, furthermore, has not raised the authenticity of the document as an issue on appeal. See *Teodoro* v. *Bristol*, 184 Conn. App. 363, 378, 195 A.3d 1 (2018) (where no party objects, court not required to, but may, consider unauthenticated documents submitted in support of motion for summary judgment).

[5] General Statutes § 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (4) [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

[6] General Statutes § 46a-82 (a) provides in relevant part: "Any person claiming to be aggrieved by an alleged discriminatory practice . . . may, by himself or herself or by such person's attorney, file with the commission a complaint in writing under oath . . . ."

[7] General Statutes § 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (8) [f]or an employer, by the employer or the employer's agent, for an employment agency, by itself or its agent . . . to harass any employee, person seeking employment or member on the basis of sex or gender identity or expression. 'Sexual harassment' shall, for the purposes of this subdivision, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ."